**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| IN RE:  OIL SPILL by the OIL RIG | * | |
| "DEEPWATER HORIZON" in the | * | MDL No. 2179 |
| GULF OF MEXICO, on APRIL 20, 2010 | * | |
| | * | SECTION:  J |
| | * | |
| | * | JUDGE BARBIER |
| | * | |
| THIS DOCUMENT RELATES TO: CASE NOS. | * | MAG. JUDGE WILKINSON |
| *All Cases in Pleading Bundle B3* | * | |
| | * | |

| | | |
|---|---|---|
| | * | |
| NICHOLAS W. COLLIER, | * | |
| Plaintiff, | * | |
| v. | * | |
| | * | CIVIL ACTION No. _____ |
| BP AMERICA PRODUCTION COMPANY, PARSONS | * | |
| CORPORATION, DANOS & CUROLE STAFFING, | * | SECTION:  J |
| L.L.C., JASON ZIGLAR, DENNIS BERG, DANNY | * | |
| BLACK, MICHAEL ALLEN, MICHAEL ENGLISH, | * | JUDGE BARBIER |
| BRANDY BUXTON, JUSTIN NASH, ED THOMPSON, | * | |
| JOSEPH LOBO, PHIL PAYNE, MICHAEL EPPS, JEFF | * | MAG. JUDGE WILKINSON |
| JOHNSON, DARRYL GONZALES, LEIGH A. "LIA" | * | |
| BARNES, MARSHA DAVIDSON, CHARLOTTE | * | |
| THOMPSON, AND DONALD L. "SCOOTER" | * | |
| FREDRICKSON, II, | * | |
| Defendants. | * | |

<u>COMPLAINT</u>

Plaintiff Nicholas W. Collier submits the following as his Complaint against BP America

Production Company, Parsons Corporation, Danos & Curole Staffing, L.L.C., Jason Ziglar, Dennis

Berg, Danny Black, Michael Allen, Michael English, Brandy Buxton, Justin Nash, Ed Thompson,

Joseph Lobo, Phil Payne, Michael Epps, Jeff Johnson, Darryl Gonzales, Leigh A. "Lia" Barnes,

Marsha Davidson, Charlotte Thompson, and Donald L. "Scooter" Fredrickson, II as follows:

## I.   PARTIES

### A.   *Plaintiff*

1.      Plaintiff Nicholas W. Collier participated in BP America Production Company's Vessels of Opportunity program.   Plaintiff Collier entered into a Master Vessel Charter Agreement with BP America Production Company.   Plaintiff Collier is a resident citizen of Mobile County, Alabama and is over the age of 19.

### B.   *The Corporate Defendants*

2.      BP America Production Company is a Delaware corporation with its principal place of business in the State of Texas.  BP America Production Company was a party to each of the Master Vessel Charter Agreements signed by the Plaintiffs.

3.      Parsons Corporation is a Delaware corporation with its principal place of business in California.  BP America Production Company contracted with Parsons Corporation to operate and manage the Vessels of Opportunity program.

4.      Danos & Curole Staffing, L.L.C is a Louisiana limited liability company.   BP America Production Company contracted with Danos & Curole Staffing, LLC to provide accounting and payment services for the Vessels of Opportunity program.

### C.   *The Individual Defendants*

5.      Jason Ziglar is a resident citizen of Mobile County, Alabama.  At all times relevant to this complaint, Jason Ziglar was employed by and/or an agent of BP America Production Company.  Jason Ziglar managed, operated and solicited vessels for BP America Production Company's Vessels of Opportunity program.  At all times relevant to this complaint, Jason Ziglar was based in and operated out of Mobile County, Alabama.

6.     Dennis Berg is a resident citizen of Mobile County, Alabama.   At all times relevant to this complaint, Dennis Berg was employed by and/or an agent of Parsons Corporation.  Dennis Berg managed, operated and solicited vessels for BP America Production Company's Vessels of Opportunity program.  At all times relevant to this complaint, Dennis Berg was based in and operated out of Mobile County, Alabama.

7.     Danny Black is a resident citizen of Mobile County, Alabama.   At all times relevant to this complaint, Danny Black was employed by and/or an agent of Parsons Corporation.  Danny Black managed, operated and solicited vessels for BP America Production Company's Vessels of Opportunity program.   At all times relevant to this complaint, Danny Black was based in and operated out of Mobile County, Alabama.

8.     Michael Allen is a resident citizen of Mobile County, Alabama.   At all times relevant to this complaint, Michael Allen was employed by and/or an agent of Parsons Corporation.  Michael Allen managed, operated and solicited vessels for BP America Production Company's Vessels of Opportunity program.   At all times relevant to this complaint, Michael Allen was based in and operated out of Mobile County, Alabama.

9.     Michael English is a resident citizen of Mobile County, Alabama.   At all times relevant to this complaint, Michael English was employed by and/or an agent of Parsons Corporation.   Michael English managed, operated and solicited vessels for BP America Production Company's Vessels of Opportunity program.  At all times relevant to this complaint, Michael English was based in and operated out of Mobile County, Alabama.

10.     Brandy Buxton is a resident citizen of Mobile County, Alabama.   At all times relevant to this complaint, Brandy Buxton was employed by and/or an agent of BP.  Brandy

Buxton participated in accounting and payment services for BP America Production Company's Vessels of Opportunity program.  At all times relevant to this complaint, Brandy Buxton was based in and operated out of Mobile County, Alabama.

11.    Justin Nash is a resident citizen of Anchorage, Alaska.  At all times relevant to this complaint, Justin Nash was employed by and/or an agent of BP America Production Company. Justin Nash managed, operated and solicited vessels for BP America Production Company's Vessels of Opportunity program.  At all times relevant to this complaint, Justin Nash was based in and operated out of Mobile County, Alabama.

12.    Ed Thompson is a resident citizen of Alaska.  At all times relevant to this complaint, Ed Thompson was employed by and/or an agent of Parsons Corporation.  Ed Thompson managed, operated and solicited vessels for BP America Production Company's Vessels of Opportunity program.  At all times relevant to this complaint, Ed Thompson was based in and operated out of Mobile County, Alabama.

13.    Joseph Lobo is a resident citizen of Texas.  At all times relevant to this complaint, Joseph Lobo was employed by and/or an agent of BP America Production.  Joseph Lobo managed, operated and solicited vessels for BP America Production Company's Vessels of Opportunity program.  At all times relevant to this complaint, Joseph Lobo was based in and operated out of Mobile County, Alabama.

14.    Phil Payne is a resident citizen of Mississippi.  At all times relevant to this complaint, Phil Payne was employed by and/or an agent of Parsons Corporation.  Phil Payne managed, operated and solicited vessels for BP America Production Company's Vessels of

Opportunity program.  At all times relevant to this complaint, Phil Payne was based in and operated out of Mobile County, Alabama.

15.     Michael Epps' resident citizenship is unknown.  At all times relevant to this complaint, Michael Epps was employed by and/or an agent of Parsons Corporation.  Michael Epps managed, operated and solicited vessels for BP America Production Company's Vessels of Opportunity program.  At all times relevant to this complaint, Michael Epps was based in and operated out of Mobile County, Alabama.

16.     Jeff Johnson is a resident citizen of Anchorage, Alaska.  At all times relevant to this complaint, Jeff Johnson was employed by and/or an agent of BP America Production Company.  Jeff Johnson managed, operated and solicited vessels for BP America Production Company's Vessels of Opportunity program.  At all times relevant to this complaint, Jeff Johnson was based in and operated out of Mobile County, Alabama.

17.     Darryl Gonzales' resident citizenship is unknown.  At all times relevant to this complaint, Darryl Gonzales was employed by and/or an agent of BP America Production Company.  Darryl Gonzales managed, operated and solicited vessels for BP America Production Company's Vessels of Opportunity program.  At all times relevant to this complaint, Darryl Gonzales was based in and operated out of Mobile County, Alabama.

18.     Leigh A. "Lia" Barnes is a resident citizen of Mobile County, Alabama.  At all times relevant to this complaint, Lia Barnes was employed by and/or an agent of Parsons Corporation.  Lia Barnes managed, operated and solicited vessels for BP America Production Company's Vessels of Opportunity program.  At all times relevant to this complaint, Lia Barnes was based in and operated out of Mobile County, Alabama.

19.     Marsha Davidson is a resident citizen of Mobile County, Alabama.  At all times relevant to this complaint, Marsha Davidson was employed by and/or an agent of Parsons Corporation.  Lia Barnes managed, operated and solicited vessels for BP America Production Company's Vessels of Opportunity program.  At all times relevant to this complaint, Lia Barnes was based in and operated out of Mobile County, Alabama.

20.     Charlotte Thompson is a resident citizen of Texas.  At all times relevant to this complaint, Charlotte Thompson was employed by and/or an agent of BP America Production Company.  Charlotte Thompson managed, operated and solicited vessels for BP America Production Company's Vessels of Opportunity program.  At all times relevant to this complaint, Charlotte Thompson was based in and operated out of Mobile County, Alabama.

21.     Donald L. "Scooter" Fredrickson, II  is a resident citizen of Baldwin County, Alabama.  At all times relevant to this complaint, Donald Fredrickson was employed by and/or an agent of Parsons Corporation.  Donald Fredrickson managed, operated and solicited vessels for BP America Production Company's Vessels of Opportunity program.  At all times relevant to this complaint, Donald Fredrickson was based in and operated out of Mobile County, Alabama.

## II.    FACTUAL ALLEGATIONS

22.     This case arises from uniform Master Vessel Charter Agreements entered into between Plaintiff and Defendant BP America Production Company ("BP").  The uniform Master Vessel Charter Agreements were entered into as part of BP's VOO program.  BP, Parsons Corporation, Danos & Curole and the Individual Defendants have engaged in an illegal and unlawful conspiracy to defraud Plaintiff and to underpay Plaintiff for services, equipment,

materials, repairs and decontaminations related to the VOO program and the oil spill response. That conspiracy is described more fully below.

23.    Following the Deepwater Horizon oil spill, BP established the VOO program as part of BP's response to the oil spill.  Publicly, BP claimed that the VOO program would help clean up the Gulf Coast and would provide money to people affected by the oil spill.  Once implemented, the VOO program was marred by mismanagement, corruption and broken promises.  As a result, when the VOO program was concluded, thousands of participants, including Plaintiff, were left holding the bag for millions of dollars for unpaid services, equipment, materials, repairs and decontaminations.

24.    The VOO program was organized, implemented, administered, orchestrated and operated through BP's Mobile Operations Center and BP's Mobile Incident Information Center, both of which have been located in Mobile County, Alabama at all times material hereto.

25.    At all times relevant to this Complaint, Individual Defendants Jason Ziglar, Dennis Berg, Danny Black, Michael Allen, Michael English, Brandy Buxton, Justin Nash, Ed Thompson, Leigh Barnes, Marsha Davidson, Charlotte Thompson, Phil Payne and Donald Fredrickson were based out of Mobile County, Alabama and worked and operated from BP's Mobile Operations Center and BP's Mobile Incident Information Center.  Individual Defendants Jason Ziglar, Dennis Berg, Danny Black, Michael Allen, Michael English, Brandy Buxton, Justin Nash, Ed Thompson, Leigh Barnes, Marsha Davidson, Charlotte Thompson, Phil Payne and Donald Fredrickson were instrumental in implementing and carrying out BP and the other Corporate Defendants' conspiracy to defraud Plaintiff, to fraudulently induce Plaintiff into the VOO program and to

underpay Plaintiff for services, equipment, materials, repairs and decontaminations related to Plaintiff's vessels' participation in the VOO program.

26.     To implement the VOO program, BP and the other Defendants needed to mobilize thousands of vessels, captains and crew members in a very short period of time. However, many of the vessels, captains and crew members that needed to be mobilized, although idled by the Deepwater Horizon oil spill, were entitled under applicable law to be reimbursed by BP for all of their lost income resulting from the Deepwater Horizon oil spill.  As a result, in order to effectively implement the VOO program, BP and the other Defendants had to convince vessel owners, captains and crew members that they would receive more money through the VOO program than if they sat idle at the dock or pursued other employment or income opportunities.

27.     In late April 2010 and continuing through the summer of 2010, BP and the other Defendants launched a campaign to solicit participants for the VOO program.  This campaign consisted of, among other things, town hall and community meetings, television, radio, print and internet advertisements and assorted other meetings, communications and discussions with individuals and small groups.

28.     BP's town hall and community meetings were open to the public and often videotaped.  The town hall and community meetings were BP and the other Defendants' primary means of "getting the word out" about the VOO program.  The representations and communications made by BP and the other Defendants during these meetings were intended and expected to be communicated to and relied on by persons not present at the town hall and community meetings.

8

29.     Throughout this campaign, and to encourage vessel owners, captains and crew members to participate in the VOO program, BP and the other Defendants represented, promised and warranted, among other things, that (a) VOO participants would be paid for standby time; (b) VOO participants would be fully reimbursed for any damage to their vessels that occurred while the vessels were in the VOO program; (c) VOO participants would be reimbursed for costs and expenses incurred as a result of the VOO program; (d) VOO participants' vessels would be decontaminated at BP's expense at the conclusion of the VOO program; and (e) the income that VOO participants received through the VOO program would not be used to offset the lost income claims that VOO participants had against BP as a result of the Deepwater Horizon oil spill.  BP and the other Defendants knew that these representations were false when made.  Further, these false representations were part of and in furtherance of BP and the other Defendants' unlawful and illegal conspiracy to defraud Plaintiff and to underpay Plaintiff for services, equipment, materials, repairs and decontaminations related to Plaintiff's participation in the VOO program.

30.     In order to gain entry into the VOO program, a vessel owner was required to execute a Master Vessel Charter Agreement.  The Master Vessel Charter Agreement was substantially identical for each participant in the VOO program.

31.     The Master Vessel Charter Agreement provides that (a) the charter begins when the vessel is activated; (b) after being activated, the vessel must be available and ready to work 24 hours a day, 7 days a week; and (c) the charter does not end until BP sends the vessel owner an "off-hire dispatch notification" and the vessel is decontaminated.

32.     The Master Vessel Charter Agreement also required that BP: (a) reimburse VOO participants for damage to their vessels that occurred while the vessels were in the VOO program; (b) reimburse VOO participants for costs and expenses incurred as a result of the VOO program; and (c) decontaminate the vessels that participated in the VOO program at BP's expense.

33.     After VOO participants executed the Master Vessel Charter Agreement, BP and the other Defendants continued to represent to VOO participants that they: (a) would be paid for standby time; (b) would be fully reimbursed for any damage to their vessels that occurred while the vessels were in the VOO program; (c) would be reimbursed for costs and expenses incurred as a result of the VOO program; (d) would have their vessels decontaminated at BP's expense at the conclusion of the VOO program; and (e) would not have the income that they received through the VOO program offset against the lost income claims that they had against BP as a result of the Deepwater Horizon oil spill.  BP and the other Defendants knew that these representations were false when made.  Further, these false representations were part of and in furtherance of BP and the other Defendants' unlawful and illegal conspiracy to defraud Plaintiff and to underpay Plaintiff for services, equipment, materials, repairs and decontaminations related to Plaintiff's participation in the VOO program.

34.     The invoicing and payment program designed by BP and the other Defendants for the VOO program was intentionally slow and inefficient.  VOO participants were routinely told that their paper work and invoices were insufficient or had been lost.  At times, it took weeks and months for VOO participants to be paid for services, equipment, materials and repairs.  When payment was finally received, it was difficult, if not impossible, for VOO

participants to tell which invoices and services, equipment, materials and repairs the payment applied to.

35.     This deliberately slow and confusing payment methodology was part of and in furtherance of BP and the other Defendants' unlawful and illegal conspiracy to underpay VOO participants.   In particular, BP and the other Defendants used this intentionally slow and deceptive process to prevent VOO participants from discovering that BP and the other Defendants intended to underpay VOO participants.

36.     Beginning in July 2010, BP and the other Defendants decided to phase out the VOO program.  However, with oil still in the Gulf of Mexico and mounting public pressure on BP, BP and the other Defendants determined that it would be a public relations disaster to send thousands of VOO participants an "off-hire dispatch notification" pursuant to the uniform Master Service Charter Agreements.  Accordingly, as BP and the other Defendants increased the number of VOO participants that were on standby, BP and the other Defendants continued to represent to VOO participants that they were still in the VOO program and that they would be fully paid for services, equipment, materials, repairs and decontaminations related to Plaintiff's participation in the VOO program.   These representations were part of and in furtherance of BP and the other Defendants' unlawful and illegal conspiracy to defraud and to underpay VOO participants.

37.     In late July 2010, Tropical Storm Bonnie came ashore in Louisiana.   Tropical Storm Bonnie provided BP and the other Defendants with an opportunity to begin substantially phasing out the VOO program.  Prior to Tropical Storm Bonnie's landfall, BP and the other Defendants put virtually all participants in the VOO program on standby and began moving

substantial amounts of VOO materials, equipment and assets out of the Gulf Region.  BP and the other Defendants represented, promised and warranted to the press, public and VOO participants that this demobilization was in preparation for Tropical Storm Bonnie, that the VOO program was not being phased out, and that VOO participants would be back out on the water in no time.  The reality, however, was that BP and the other Defendants did not want to deal with the public relations fallout of telling the VOO participants that the VOO program was being phased out.

38.     After Tropical Storm Bonnie's landfall, the majority of VOO participants remained on standby and were not called back out on the water, as BP and the other Defendants had represented.  In late August 2010, with the Macondo Well capped, BP began sending official "off-hire dispatch notifications" to VOO participants.  Following notification of being off-hire, Plaintiffs attempted to have their vessels decontaminated, only to be put off for weeks or months by BP and the other Defendants.  Since that time, BP and the other Defendants have refused to pay for services, equipment, materials, repairs and decontaminations related to Plaintiff's participation in the VOO program.

39.     Since the VOO program ended, BP and the other Defendants have refused to compensate Plaintiff for services, equipment, materials, repairs and decontaminations related to Plaintiff's participation in the VOO program, as required by the Master Vessel Charter Agreements and as represented by BP and the other Defendants.

40.     Both prior to and during the VOO program, BP and the other Defendants concealed from Plaintiff that (a) VOO participants would not be paid for standby time; (b) VOO participants would not be fully reimbursed for damage to their vessels that occurred while the

vessels were in the VOO program; (c) VOO participants would not be reimbursed for costs and expenses incurred as a result of the VOO program; (d) VOO participants' vessels would not be decontaminated at BP's expense at the conclusion of the VOO program; and (e) the income that VOO participants received through the VOO program would offset the claims VOO participants had against the BP as a result of the Deepwater Horizon oil spill.  Further, BP and the other Defendants' concealment of these material facts from Plaintiff was part of and in furtherance of BP and the other Defendants' unlawful and illegal conspiracy to defraud Plaintiff and to underpay Plaintiff for services, equipment, materials, repairs and decontaminations related to Plaintiff's participation in the VOO program.

### ***Plaintiff Nicholas W. Collier***

41.     On or about May 15, 2010, Plaintiff Nicholas W. Collier and BP entered into Master Vessel Charter Agreement No. 57372 for a 20 foot vessel owned by Plaintiff Nicholas W. Collier.  BP agreed to pay Plaintiff Nicholas W. Collier $1,200 per day as charter hire for the vessel.

42.     Prior to and after Plaintiff Nicholas W. Collier and BP entered into Master Vessel Charter Agreement No. 57372, the Corporate Defendants and some of the Individual Defendants represented and warranted to Plaintiff Nicholas W. Collier, among other things, that he would be paid for standby time and that he would be fully reimbursed for any damage to his vessel that occurred while the vessel was in the VOO program.

43.     Plaintiff Nicholas W. Collier received an off-hire dispatch notification for his vessel some time after August 27, 2010.

44.     Contrary to the representations and warranties of the Corporate and Individual Defendants, Plaintiff Nicholas W. Collier has not been fully compensated for: (a) time his vessel actually spent on the water during the VOO program; (b) time his vessel spent on standby during the VOO program; (c) reimbursable costs and expenses incurred as a result of the VOO program; and/or (d) repairs and decontamination of his vessel.

45.     In accordance with Pre-Trial Order 63 (Doc. 22295) in the matter entitled *In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, filed in the United States District Court for the Eastern District of Louisiana, Docket No. 2:10-md-02179-CJB-JCW, Plaintiff Collier submits his Sworn Statement, attached hereto as Exhibit A.

## IV.   LEGAL THEORIES
### COUNT ONE
### Breach of Contract

46.     Plaintiff incorporates by reference the preceding allegations of this Complaint as if fully set forth herein.

47.     BP has breached the terms of the uniform Master Vessel Charter Agreements.  In particular, BP has refused and failed to pay Plaintiff for services, equipment, materials, repairs and decontaminations, as required by Plaintiff's Master Vessel Charter Agreements entered into with BP.

WHEREFORE, Plaintiff demands judgment against Defendant BP America Production for compensatory damages, plus interest, costs and all other relief that is appropriate and just.

**COUNT TWO**

**Fraudulent Misrepresentation**

48.     Plaintiff incorporates by reference the preceding allegations of this Complaint as if fully set forth herein.

49.     The Corporate Defendants and Individual Defendants made false representations of material facts to Plaintiff regarding the VOO program as set forth above.

50.     Plaintiff relied on the Corporate Defendants and Individual Defendants' false representations of material facts regarding the VOO program.

51.     Plaintiff's reliance on the Corporate Defendants and Individual Defendants' false representations of material facts regarding the VOO program was reasonable under the circumstances.

52.     Plaintiff has been damaged as the proximate result of their reliance on the Corporate Defendants and the Individual Defendants' false representations of material facts regarding the VOO program.

WHEREFORE, Plaintiff demands judgment against the Corporate Defendants and Individual Defendants for compensatory damages and punitive damages, plus interest, costs and all other relief that is appropriate and just.

**COUNT THREE**

**Fraudulent Suppression**

53.     Plaintiff incorporates by reference the preceding allegations of this Complaint as if fully set forth herein.

54.     The Corporate Defendants and Individual Defendants had a duty to disclose to Plaintiff all material facts regarding the VOO program.

55.     The Corporate Defendants and Individual Defendants concealed material facts from Plaintiff regarding the VOO program.

56.     As the result of the Corporate Defendants and Individual Defendants' concealment of material facts from Plaintiff regarding the VOO program, Plaintiff was induced to sign up for and continue to participate in the VOO program when he could have engaged in other activities and/or opportunities.

57.     Plaintiff has been damaged as the proximate result of the Corporate Defendants and Individual Defendants' concealment of material facts regarding the VOO program.

WHEREFORE, Plaintiff demands judgment against the Corporate Defendants and Individual Defendants for compensatory damages and punitive damages, plus interest, costs and all other relief that is appropriate and just.

**COUNT FOUR**

**<u>Conspiracy</u>**

58.     Plaintiff incorporates by reference the preceding allegations of this Complaint as if fully set forth herein.

59.     The Corporate Defendants and the Individual Defendants have engaged in an illegal and unlawful conspiracy to defraud Plaintiff, to induce Plaintiff's participation in the VOO program and to underpay Plaintiff for services, equipment, materials, repairs and decontaminations related to Plaintiff's participation in the VOO program.

60.     The acts of the Corporate Defendants and the Individual Defendants described above constitute the independent wrong of civil conspiracy under the laws of the State of Alabama.

61.    Plaintiff has been damaged as the result of the Corporate Defendants and Individual Defendants illegal and unlawful conspiracy.

WHEREFORE, Plaintiff demands judgment against the Corporate Defendants and the Individual Defendants for compensatory damages and punitive damages, plus interest, costs and all other relief that is appropriate and just.

**PLAINTIFFS DEMAND A JURY TRIAL.**

Date: April 12, 2017

/s/ Allison W. Smalley
**Allison W. Smalley,** La. Bar No. 32957
CUNNINGHAM BOUNDS, LLC
1601 Dauphin Street, P.O. Box 66705
Mobile, Alabama  36660
Phone:  251-471-6191
Fax:  251-479-1031
E-mail: aws@cunninghambounds.com

OF COUNSEL:          **Robert T. Cunningham**
CUNNINGHAM BOUNDS, LLC
1601 Dauphin Street, P.O. Box 66705
Mobile, Alabama  36660
Phone:  251-471-6191
Fax:  251-479-1031
E-mail: rtc@cunninghambounds.com

**Steven L. Nicholas**
CUNNINGHAM BOUNDS, LLC
1601 Dauphin Street, P.O. Box 66705
Mobile, Alabama  36660
Phone:  251-471-6191
Fax:  251-479-1031
E-mail: sln@cunninghambounds.com

**Stephen C. Olen**
CUNNINGHAM BOUNDS, LLC
1601 Dauphin Street, P.O. Box 66705
Mobile, Alabama  36660
Phone:  251-471-6191
Fax:  251-479-1031
E-mail: sco@cunninghambounds.com